**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:17-CV-20039-KMW**

MSPA CLAIMS 1, LLC, a Florida limited
liability company, as assignee of Florida
Healthcare Plus, on behalf of itself and all
other similarly situated Medicare Advantage
Organizations in the State of Florida,

       Plaintiff,                            **CLASS ACTION**

v.

TENET FLORIDA, INC., a Foreign Profit
Corporation, and ST. MARY'S MEDICAL
CENTER, INC., a Florida Profit Corporation,

       Defendants.
_____/

**SECOND AMENDED CLASS ACTION COMPLAINT**
**FOR DAMAGES AND DECLARATORY RELIEF**
**(Amended as of February 6, 2017)**

       Plaintiff, MSPA Claims 1, LLC ("Plaintiff" or "MSPA"), as assignee of Florida Healthcare

Plus, Inc. ("FHCP"), on behalf of itself and all other similarly-situated Medicare Advantage

Organizations ("MAO(s)") operating in Florida, through undersigned counsel, hereby brings this

Second Amended Class Action Complaint ("Amended Complaint") against Defendant, Tenet

Florida, Inc. ("Tenet"), and Defendant, St. Mary's Medical Center, Inc. ("St. Mary's")

(collectively, "Defendants"), and states as follows:

## I.    <u>NATURE OF THE ACTION</u>

Plaintiff brings this action to recover amounts due and owing to Plaintiff, as assignee of FHCP, through the claims of P.H., an individual enrollee of FHCP ("Enrollee")[1], *i.e.*, a Medicare beneficiary who elected Medicare Advantage ("MA") coverage under a plan administered by FHCP ("MA plan").  FHCP was billed and paid for medical items and services provided to Enrollee while at Defendants' hospital or medical center.

St. Mary's billed and received payment from FHCP for medical items and services despite the existence of a primary payer that provided concurrent insurance coverage and that was primarily responsible for Enrollee's medical expenses. Plaintiff, as assignee of all of FHCP's direct rights of recovery, subrogation rights, third party beneficiary rights and/or recovery and reimbursement rights, on behalf of itself and approximately thirty-seven (37) other similarly situated MAOs (the "Class"), seeks reimbursement for amounts paid to Defendants in accordance with the Medicare Secondary Payer law and for which Defendants had also billed a primary payer for identical medical items and services rendered to enrollees.

## II.    <u>JURISDICTION, PARTIES, AND VENUE</u>

1.      This Court has original jurisdiction of this action under "federal question" jurisdiction pursuant to 28 U.S.C. § 1331.

2.      In addition, this Court has jurisdiction over Counts IV – V of this Amended Complaint under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

3.      This Court has supplemental jurisdiction over Counts II and III of this Amended Complaint pursuant to 28 U.S.C. § 1367.

---

[1] To ensure that this document is HIPAA compliant, P.H., shall only be referred to as "Enrollee." The name of Enrollee is known to Defendant but is not pled in this Complaint to protect the Enrollee's privacy.

4.     Plaintiff is a limited liability company duly organized, validly existing, and in good standing under the laws of Florida, with its principal place of business in Miami-Dade County, Florida.

5.     At all material times related to the events set forth in this Complaint, FHCP and the purported class members contracted with CMS to administer Medicare benefits for Medicare beneficiaries who elect to enroll in the MA program.  As such, FHCP is an MAO.

6.     On April 15, 2014, FHCP assigned all its aforementioned subrogation claims, recovery, and reimbursement rights against any liable primary payer, including Defendant, to La Ley Recovery Systems, Inc. ("La Ley Recovery"), divesting FHCP of all of its rights, title and interest in and to its recoveries.  [*See* Exhibit A, *FHCP-La Ley Recovery Assignment Agreement*].

7.     Section 1.1 of the FHCP-La Ley Recovery Assignment Agreement between FHCP and La Ley Recovery provides as follows:

> [b]y way of this agreement, [FHCP] appoints, directs, and otherwise **assigns** all of [FHCP's] rights as it pertains to the rights pursuant to any plan, State or Federal statute whatsoever directly and/or indirectly for any its members and/or plan participants.

[Exhibit A, *FHCP-La Ley Recovery Assignment Agreement § 1.1* (emphasis added)].

8.     Article III of the FHCP-La Ley Recovery Assignment Agreement permits La Ley Recovery to contract with Plaintiff to collect on any subrogation claim, which states as follows:

> [FHCP] agrees that La Ley Recovery, at its discretion may contract law firms, lawyers, experts, investigators, claims specialists to collect on any claim(s), subrogation amounts or any other amounts recoverable pursuant to the terms of this agreement.

[Exhibit A, *FHCP-La Ley Assignment Agreement Article III*].

9.     After FHCP and La Ley Recovery entered into the FHCP-La Ley Recovery Assignment Agreement, FHCP was placed into Receivership Proceedings in Leon County, Florida. Pursuant to a Liquation Order, the Florida Department of Financial Services (the

"Department") was appointed as Receiver for FHCP effective January 1, 2015, and thus, stepping

into the shoes of FHCP to make any decisions based on the interests of FHCP, including the

authorization to consent, agree or otherwise affirm any agreements entered into or extended by

FHCP and other related entities, such as Plaintiff.

10.     On February 20, 2015, La Ley Recovery[2] assigned all of the rights obtained from

FHCP, specifically the right to pursue recoveries related to accidents or incidents recoverable

pursuant to the Medicare Secondary Payer Act, the Medicaid Third Party Liability Act, and/or

applicable Federal and State subrogation laws to Plaintiff ("La Ley Recovery-MSPA Claims 1

Assignment Agreement").  That assignment agreement provides as follows:

> [La Ley Recovery] hereby irrevocably assigns, transfers, conveys, sets over,
> and delivers to [Plaintiff] or its assigns any and all of [La Ley Recovery]'s
> rights, title, ownership and interest in and to all rights and entitlements, that [La
> Ley Recovery] has, may have had, or has asserted against third parties arising
> from or relating to the Claims.

[Exhibit B, *La Ley Recovery-Plaintiff Assignment Agreement § 1*].

11.     On June 1, 2016, the Department, acting in its capacity as receiver for FHCP,

entered into a settlement agreement ("Settlement Agreement") with La Ley Recovery Systems

Inc., La Ley Recovery Systems – FHCP, Inc., MSP Recovery LLC, MSP Recovery Services, LLC,

and MSPA Claims 1, LLC (collectively referred to as "La Ley Companies") related to its recovery

interest as detailed in Paragraph 10.  [*See* Exhibit C, *Settlement Agreement*].

12.     In the Settlement Agreement, the Department acknowledged and agreed to the

terms and conditions of the FHCP-La Ley Recovery Assignment Agreement, which was executed

by and between FHCP and La Ley Recovery and, in pertinent part, states as follows:

> WHEREAS, on April 15, 2014, La Ley entered into a Cost Recovery
> Agreement with Florida Healthcare Plus, Inc. ("FHCP") under which FHCP

---

[2] Prior to the consummation of the La Ley Recovery-Plaintiff Assignment Agreement, FHCP
approved Plaintiff as assignee.

assigned all rights, titled and interest held by FHCP to certain recoveries related to accidents or incidents recoverable pursuant to the Medicare Secondary Payer Act, the Medicaid Third Party Liability Act, and/or applicable Federal and State subrogation laws (the "Initial Agreement") . . .

**2. Assignment of Claims and Recoveries**. Receiver acknowledges and agrees that the terms and conditions of the Initial Agreement, to the extent such terms and conditions do not conflict with the terms and conditions of this Settlement Agreement, shall remain in full force and effect from April 15, 2014 until the Effective Date of this Settlement Agreement.

a. Receiver hereby agrees the Receiver shall not object to, or seek to terminate for any reason, the Initial Agreement, and expressly acknowledges and agrees that as of the execution of the Initial Agreement, all rights, title, and interest held by FHCP to recoveries, including any rights, title and interest assigned to FHCP pursuant to contractual agreements with FHCP members, related to accidents or incidents recoverable pursuant to the Medicare Secondary Payer Act, the Medicaid Third Party Liability Act, and/or any other applicable Federal or State subrogation laws, and rights, title and interest to recover payments made by FHCP on behalf of FHCP members pursuant to various legal theories related to accidents or incidents recoverable pursuant to the Medicare Secondary Payer Act, the Medicaid Third Party Liability Act, and/or any other applicable Federal or State subrogation laws **("Assigned Claims") were and continue to be irrevocably assigned to La Ley.**

[Exhibit C, *§ Recitals, 2(a)*].

13.  The Department affirmed La Ley Recovery's right to assign ***any and all*** claims of the FHCP-La Ley Recovery Assignment Agreement to any of the La Ley Companies.

14.  Specifically, the Department affirmed, approved, and recognized the La Ley Recovery-Plaintiff Assignment Agreement and Plaintiff as the assignee in accordance with Section prior to the filing of this case.  Pursuant to the Settlement Agreement, the Department explicitly states that:

**Assignment.** The Parties agree that prior to payment of the Final Settlement Payment described herein, the Parties shall not assign this Settlement Agreement, directly or indirectly, in whole or in part, without prior written approval of the other Party; provided, however, that the he Assigned Claims may be assigned by and among any of the companies collectively referred to herein as "La Ley," and **the Receiver acknowledges that any assignment of the rights described hereunder by or among those companies collectively referred to as "La Ley" occurring prior to the execution of this Settlement Agreement shall be valid and**

**enforceable**.

[Exhibit C, § 20] (emphasis added).

15.     On June 14, 2016, the Leon County Circuit Court approved the terms of the Settlement Agreement, specifically finding "that the Settlement Agreement was negotiated in good faith and is in the best interest of Florida Healthcare Plus, Inc.," and the Leon County Circuit Court further retained jurisdiction to enforce the terms of the Settlement Agreement.  [Exhibit D, *Leon County Circuit Court Order Approving Settlement*].

16.     The Leon County Circuit Court further approved the Settlement Agreement based upon the Department's audit of Plaintiff's system and methodologies, in which it explained, in pertinent part, that: "[s]ubject to this Court's approval, and based upon the rationale set forth in the agreement, including the [Department's] audit of [Plaintiff's] system and methodologies." [Exhibit D, *Leon County Circuit Court Order Approving Settlement*].

17.     Therefore, prior to the filing of this suit, Plaintiff maintained the requisite standing to file suit.

18.     Accordingly, Plaintiff possesses all of FHCP's subrogation rights to pursue and recover all medical claims, bills, and expenses FHCP provided on behalf of its MA enrollee from and against any liable primary payer, including Defendant, pursuant to the rights transferred from FHCP.

19.     St. Mary's is a Florida Profit Corporation organized to conduct business in the state of Florida with a registered agent and address of: CT Corporation System, 1200 S. Pine Island Rd., Plantation, Florida 33324.  St. Mary's is a subsidiary of Tenet.

20.     Tenet is a Foreign Profit Corporation organized to conduct business in the state of Florida with a registered agent and address of: CT Corporation System, 1200 S. Pine Island Rd., Plantation, Florida 33324.  Tenet, a subsidiary of Tenet Healthcare Corporation.

21.     Venue is proper pursuant to section 47.051, Florida Statutes, as the cause of action accrued and Defendants were required to reimburse Plaintiff in Miami-Dade County, Florida.

22.     Plaintiff complied with all conditions precedent prior to the filing of this suit.

### III.   LEGAL BACKGROUND

23.     Medicare is a system of federally funded health insurance for people 65 and older, certain disabled persons, and persons with End Stage Renal Disease. Congress enacted the Medicare Program as Title XVIII of the Social Security Act ("Medicare Act"). 42 U.S.C. § 1395, *et seq.* Medicare is a complex federal program that provides health benefits to over 53 million Americans in 2014 with total expenditures of $613.3 billion.[3] This suit challenges practices that drain money from the Medicare Trust Funds and increase the costs borne by elderly and disabled beneficiaries who enroll in MA plans.

**A.     The Medicare Act**

24.     Subchapter XVIII of the Social Security Act – commonly called the Medicare Act – is divided into five "Parts."

25.      Part A provides hospital and certain other facility benefits. *See* 42 U.S.C. §§ 1395c to 1395i-5. Part B provides medical benefits, and although heavily subsidized by the federal government, it is a voluntary program that requires a small premium from the beneficiary. *See* 42 U.S.C. §§ 1395j to 1395w-4. Parts A and B are often collectively referred to as the "original Medicare fee-for-service program option."

26.     Medicare Part C creates an alternative option for Medicare benefits provided by private contractors. *See* 42 U.S.C. §§ 1395w-21 to 1395w-29. Congress enacted Medicare Part C

---

[3] *See* 2015 Annual Report of the Boards of Trustees of the Federal Hospital Insurance and Federal Supplementary Medical Insurance Trust Funds, p. 7.

to "enable the Medicare program to utilize innovations that have helped the private market contain costs and expand health care delivery options." H.R. Rep. No. 105-217, at 585 (1997) (Conf. Rep.). Congress initially called this program "Medicare + Choice." S*ee* Balanced Budget Act of 1997, Pub. L. No. 105-33, Title IV, §§ 4001-4006, 111 Stat. 251, 275-334 (Aug. 5, 1997). In 2003, Congress amended certain provisions of the program and renamed it "Medicare Advantage." S*ee* Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA"), Pub. L. No. 108-173, Title II, §§ 201-241, 117 Stat. at 2176-221.

27.     Medicare Part D is the voluntary prescription drug benefit and was added in 2003. *See* Title I, §§ 101-111, 117 Stat. 2066, 2071-176 (Dec. 8, 2003) (codified at 42 U.S.C. §§ 1395w-101 to 1395w-152).

28.     The final "Part" of Title XVIII is Medicare Part E, which contains definitions and general provisions applicable to the entire Medicare program. *See* 42 U.S.C. §§ 1395x – 1395y. The Medicare Secondary Payer law, 42 U.S.C. § 1395y(b), is codified in Part E.

**B.     The Medicare Advantage (Medicare Part C) Program**

29.     The Medicare Act guarantees eligible beneficiaries the right to elect to receive Medicare benefits either through the original Medicare fee-for-service option or through a MA plan. *See* 42 U.S.C. § 1395w-21(a).

30.     The MA program is a federal program, operated under federal rules, funded by federal dollars.

31.   The funds for MA benefits come from the Medicare Trust Funds. *See* 42 U.S.C. § 1395w-23(f). The Medicare Trust Funds expended approximately $145.6 billion to provide Medicare benefits through the MA program in 2013.[4]

32.   The Conference Committee which finalized the legislation that became Medicare Part C intended that both the original Medicare fee-for-service option and the MA option would be regulated by the Federal government which would "alone set legislative requirements regarding reimbursement, covered providers, covered benefits and services, and mechanisms for resolving coverage disputes." Balanced Budget Act of 1997, P.L. 105-33, H.R. Conf. Rep. 105-217 (July 30, 1997). The conferees believed that the MA program would "eventually eclipse original fee for service Medicare as the predominant form of enrollment under the Medicare program." *Id.*

## C.    MAOs and the Medicare Secondary Payer Law

33.   In 1980, in response to skyrocketing costs, Congress began enacting the provisions that now comprise the Medicare Secondary Payer law, 42 U.S.C. § 1395y(b) ("MSP Law"). The primary intent underlying the MSP Law is to shift the financial burden of health care from the Medicare program to private insurers and thereby lower the cost of the Medicare program.

34.   The terms of the MSP Law make clear that it is applicable to all payments "under this Subchapter," which includes payments made by MAOs under Part C of the Medicare Act. 42 U.S.C. § 1395y(b)(2)(A).

35.   Moreover, Medicare Part C expressly incorporates the MSP Law into the MA program.  It authorizes an MAO to charge a primary plan or an individual that has been paid by a primary plan "under circumstances in which payment under this title is made secondary pursuant

---

[4] 2015 Annual Report of the Boards of Trustees of the Federal Hospital Insurance and Federal Supplementary Medical Insurance Trust Funds, Table IV.C.2 (HI and SMI combined), p. 156.

to" the MSP Law. 42 U.S.C. §1395w-22(a)(4). In doing so, Congress expressed its understanding and intent that the MSP Law applies to Medicare Part C.

36.     The MSP Law creates a federal coordination of benefits framework, in which worker's compensation, liability insurance, and no fault insurance are primary, and Medicare benefits are secondary.  *See* 42 U.S.C. § 1395y(b)(2).

37.     As with any system of coordination of benefits, the MSP Law involves both avoidance and recovery. Optimally, when items and services are covered by both a primary plan and by Medicare benefits, the providers submit their charges to the primary payer, and Medicare ***avoids*** the expense of paying those charges. Alternatively, when Medicare makes a payment for medical services that have a primary payer, regardless of the reason, Medicare may seek to ***recover*** those payments. *See* 42 U.S.C. § 1395y(b)(2); § 1395y(b)(3)(A).

38.     Because the MA program is another vehicle through which Medicare beneficiaries may receive Medicare benefits, the same MSP rules apply. *See* CMS, *Medicare Managed Care Manual*, Chap. 4, § 130.3 (Rev. 107, 06-22-12) ("In the case of … no-fault [insurance], Medicare makes conditional payments if the other insurance does not pay promptly. These conditional payments are subject to recovery when and if the other insurance does make payment.").

39.     An MAO "will exercise the same rights to recover from a primary plan, entity or individual that the Secretary exercises under the MSP regulations." 42 C.F.R. § 422.108(f). An entity that receives payment from a primary plan shall therefore be required to reimburse an MAO for Medicare payments.  *Id.*

40.     The MSP Law states unequivocally that a primary plan, and an entity that **<u>receives payment</u>** from a primary plan, **<u>shall reimburse</u>** Medicare for any payment made by Medicare with respect to an item or service "if it is demonstrated that such primary plan has or had a responsibility

to make payment with respect to such item or service." 42 U.S.C. § 1395y(b)(2)(B)(ii); *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1358 (11th Cir. 2016); *Brown v. Thompson*, 374 F.3d 253, 258 (4th Cir. 2004).

41.     The enforcement provision of the MSP Law authorizes a private cause of action to recover primary payments or reimbursements owed under the MSP Law. 42 U.S.C. § 1395y(b)(3)(A). The provision further provides that damages "shall be in an amount double the amount otherwise provided." *Id.*; *see MSP Recovery*, 835 F.3d at 1358.

42.     MAOs may charge interest if reimbursement is not made before the expiration of the 60-day period. *See* 42 C.F.R. §§ 411.24(m), 422.108(f).

## IV.     FACTUAL ALLEGATIONS

### St. Mary's Failed to Appropriately Reimburse FHCP
### After Receiving Dual Payment from Primary and Secondary Plans.

43.     Enrollee is a Medicare beneficiary who elected to obtain Medicare benefits through participation in a MA plan administered by FHCP during the relevant time period set forth in this Complaint.

44.     On September 3, 2013, Enrollee was involved in an automobile accident (the "Accident"), and as a result, was transported to St. Mary's for medical treatment.

45.     St. Mary's provided medical items and services to Enrollee related to injuries suffered in the Accident.

46.     In addition to being covered by an MA plan administered by FHCP, Enrollee was also covered at the time of the Accident by Allstate Fire and Casualty Insurance Company ("Allstate"), which provided no-fault benefits.

47.     St. Mary's billed both Enrollee's no-fault PIP insurer, Allstate, and FHCP for the items and services provided to Enrollee as a result of the Accident.

48.     On October 18, 2013, Allstate, as a primary payer, was billed $2,086.00 and paid $1,251.60 to St. Mary's for the medical items and services provided to Enrollee.

49.     On November 18, 2013, FHCP, as a secondary payer, was billed $2,086.00 and paid $285.75 to St. Mary's for the medical items and services provided to Enrollee.

50.     Accordingly, St. Mary's **received payment from both** Allstate and FHCP for the medical items and services provided to Enrollee as result of the Accident.

51.     St. Mary's was required to reimburse FHCP within sixty (60) days of the receipt of its secondary payment. *See* 42 C.F.R. § 411.24(h).

52.     Accordingly, St. Mary's was required to reimburse FHCP no later than January 17, 2014, however, St. Mary's failed to appropriately reimburse FHCP.

53.     Instead, on August 29, 2014, Tenet, on behalf of St. Mary's, sent a check to FHCP in the amount of $285.75 as its purported reimbursement in connection with Enrollee's medical payment. [*See* Exhibit G, *Tenet Check dated August 29, 2014*].  However, St. Mary's was required to pay $2,086.00, representing the charged amount billed to Plaintiff within sixty (60) days of the receipt of the payment.

54.     St. Mary's failure to reimburse Plaintiff within the sixty (60) day window entitles Plaintiff to double damages plus accrued interest pursuant to 42 U.S.C. § 1395y(b)(3)(A) and 42 C.F.R. § 411.24(h).

55.     St. Mary's was obligated and had an affirmative duty to provide "appropriate reimbursement" to FHCP once it received dual payment from the primary payer for the same items and services. *See Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1239-1240 (11th Cir. 2016); 42 C.F.R. §§ 489.20(f)-(h), 411.24(h).

**Defendants and FHCP Entered into a Hospital Services Agreement**

56.     On July 16, 2013, FHCP entered into a Hospital Services Agreement (the "Services Agreement") with Tenet on behalf of St. Mary's, with an effective date of May 1, 2013, whereby Defendants would become participating providers in FHCP's MA plan and would provide medical services to Medicare beneficiaries enrolled in FHCP's MA plans.   [*See* Exhibit E, *Hospital Services Agreement*].

57.     Among other duties and obligations, the Services Agreement provides as follows:

4.4     <u>Coordination of Benefits and Subrogation</u>.  Coordination of Benefits means a method of sequentially assigning responsibility for the payment of Covered Services rendered to a Member when a party other than a [FHCP] is identified as having primary responsibility for payment of or reimbursement for Covered Services.  If [FHCP] is other than primary, [FHCP] will pay amounts which, when added to amounts to be received by Hospital from other sources, equal to the sum of the compensation amounts set forth in this Agreement plus Copayments, Coinsurance, and Deductible, but in no event any more than the amount that would have been paid had the [FHCP] been primary.  Nothing herein will prohibit Hospital from pursuing any other amounts that there are legally entitled to pursue for providing Covered Services to Members.  Hospital shall be timely compensated by [FHCP] in accordance with Section 4.1 ad Exhibit D of this Agreement as if the [FHCP] has primary responsibility for such Covered Services while Coordination of Benefits and/or subrogation rights regarding Members are being pursued by [FHCP].

4.5     <u>Overpayments</u>. [FHCP] specifically agree [sic] not to offset, deduct or recoup any amounts from any other payments that [FHCP] believes that Hospital, any entity affixed with Hospital, or Hospital, owes [FHCP] or [FHCP] or any entity affiliated with [FHCP], under this Agreement or any other agreement.  All requests for refunds shall be submitted to Hospital in writing within twelve (12) months from the date of initial payment on the claim **in order to be eligible for repayment**.  Any requests received after this time shall be void as to the claims for such twelve-month period, and the initial payment of such claims shall be final.  If [FHCP] returns a refund sent to [FHCP] by Hospital, Hospital shall keep the returned refund and [FHCP] shall not attempt to collect refund again.

(emphasis added).

58.     Section 4.5 of the Services Agreement contravenes applicable federal law in that it improperly intends to take away, restrict, or otherwise limit Plaintiff's right to reimbursement in accordance with the MSP Law.

59.     The MSP Law clearly provides that an MAO's right to reimbursement supersedes any contractual provisions that takes away, restricts, or limits its right to bill for payments made on behalf of enrollees.  *See* 42 C.F.R. § 422.108(f) ("Consistent with § 422.402 concerning the Federal preemption of State law, the rules established under this section supersede any State laws, regulations, contract requirements, or other standards that would otherwise apply to MA plans.").

60.     Accordingly, the MSP Law and accompanying regulations preempt the Services Agreement, and therefore any provision in the Services Agreement that contravenes the MAO's rights under the MSP Law is void.

## V.     CLASS ACTION ALLEGATIONS

### FEDERAL RULE OF CIVIL PROCEDURE 23 REQUIREMENTS

61.     Plaintiff brings this suit both individually and, pursuant to Federal Rule of Civil Procedure 23, as a class action on behalf of similarly situated Florida MAOs or their assignees. Plaintiff seeks monetary damages and declaratory relief against Defendants.

62.     The Classes that Plaintiff seeks to represent are defined as follows:

**Reimbursement Class**

> any and all Florida MAOs (or its assignees) that: (1) made secondary payments on behalf of its enrollees for Defendant's, St. Mary's, medical care and treatment services; (2) were not appropriately reimbursed by St. Mary's within sixty (60) days of receipt of payment, after St. Mary's billed and received duplicate payment from a primary payer for the same medical care and treatment services; and (3) failed to pay the accrued interest after the expiration sixty (60) days of receipt of duplicate payment.

**Declaratory Relief Class**

>   any and all Florida MAOs that entered into an agreement with Defendants,
>   Tenet and/or St. Mary's, which takes away, restricts, or otherwise, limits an
>   MAO's right to recover its payments made for medical services and items
>   on behalf of its enrollees.

63.   Certain MAOs, like FHCP, are members of both Classes. Further, where it is appropriate herein, members of both Classes will be referred to collectively as "Class Members" or the "Class."

64.   Federal Rule of Civil Procedure 23(a) states that a plaintiff may sue as a representative party on behalf of a class, if it establishes that:

a.   the class is so numerous that joinder of all members is impracticable;

b.   there are questions of law or fact common to the class;

c.   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

d.   the representative party will fairly and adequately protect the interests of the class.

**A.     Numerosity**

65.   The Class is so numerous that joinder of all members is impracticable.

66.   Upon information and belief, the Class is comprised of approximately thirty-seven (37) Florida MAOs and/or their assignees.

67.   The Class Members each may have one or more enrollees in their MA plans for whom medical payments were made and for which St. Mary's also received primary payment from a primary plan for the same medical items and services.  St. Mary's failed to provide appropriate reimbursement under the MSP Law.

68.   A list on the putative Class members (between 2010 and 2016) is attached as Exhibit F.

### B.      Commonality

69.      Plaintiff and the Class Members have claims that raise common questions of law and/or fact.

70.      This is an action whereby the Plaintiff and the Class Members have claims that are based on the same theory of recovery (*i.e.*, that they are entitled reimbursement for payments made on behalf of their enrollees).

71.      Each member of the Class, including Plaintiff, possesses the same rights to obtain recovery of its payments under the MSP Law. *See* 42 U.S.C. §§ 1395w-22(a)(4), 1395y(b)(2), 1395y(b)(3)(A); 42 C.F.R. §§ 422.108(f), 489.20(f)-(h), 411.24(h).

72.      Plaintiff's claim arises from the same practice or course of conduct that gave rise to the Reimbursement Class' claims.  Specifically, the claims are predicated on St. Mary's routine practice of billing and obtaining payment from two different payers for the same medical services. Plaintiff and the Class: (1) made secondary payments on behalf of its enrollees for St. Mary's medical care and treatment services; and (2) were not reimbursed by St. Mary's within sixty (60) days of receipt of payment, after St. Mary's billed and received duplicate payment from a primary payer for the same medical care and treatment services.

73.      The harm suffered by Plaintiff and the Reimbursement Class was caused by the same common source, *i.e.*, St. Mary's failure to reimburse Plaintiff and the Classes for its secondary payments for St. Mary's medical care and treatment services, after St. Mary's billed and received duplicate payment from a primary payer for the same medical care and treatment services.

74.      Plaintiff's claims raise questions of law and/or fact that are common to the questions of law and/or fact that will be raised by the Class Members' claims, including, but not limited to, whether:

a.  under the MSP Law, payments made by Plaintiff (for the benefit of Enrollee and for other MA plan enrollees) and the Class Members are secondary;

b.  St. Mary's billed Enrollee's primary payer and Plaintiff and the Class Members for same items and services provided;

c.  St. Mary's received payment from the primary payer;

d.  St Mary's additionally received payment from a secondary payer irrespective of who paid first;

e.  St. Mary's failed to reimburse Plaintiff for the payment made within sixty (60) days of receipt of secondary payment;

f.  Plaintiff and the Class Members are entitled to double damages pursuant to 42 U.S.C. § 1395y(b)(3)(A) when St. Mary's, as an entity that received primary payment under the MSP Law, fails to provide appropriate reimbursement for secondary payments made by the Class Members;

g.  MSP Law preempts contractual provisions in the hospital services agreements entered into between Tenet, on behalf of St. Mary's, and the Class Members that takes away, limits and restricts the Class Member's right to reimbursement; and

h.  Plaintiff and the Class Members are entitled to damages for unjust enrichment.

75.     The monetary damages caused to Plaintiff (as FHCP's assignee), as well as each member of the Class, were directly and proximately caused by the acts of St. Mary's or by those under its direction, control, and/or supervision.

## C.     Typicality

76.     As the assignee of FHCP, Plaintiff's claims relating to Enrollee (and relating to its other MA plan enrollees) are typical of the claims of the members of the Class that Plaintiff will represent.  All members of the Class have been damaged in the same manner. Plaintiff's claims have the same essential characteristics as those of the proposed Class, and Plaintiff's claims arise from a similar course of conduct and share the same legal theory. Accordingly, Plaintiff as the

class representative possesses the same interests and suffered the same injury as the other members of the proposed Class, such that there is a sufficient nexus between Plaintiff's claims and those of the proposed Class.

77.    Plaintiff's claims are typical for the Class, as Plaintiff and the Class are entitled to relief owing to Defendant's, St. Mary's, failure to reimburse the Class members (or their assignees), for payments made for the cost of their enrollees' medical items and services provided.

78.    Plaintiff seeks to recover the payments St. Mary's should have reimbursed to Plaintiff and the Class for its failure to appropriately reimburse Plaintiff and the Class when it received duplicate payment from each enrollee's primary plan and the Class.

79.    Plaintiff's claims are typical for the Class, as Plaintiff and the Class are entitled to declaratory relief owing to Defendants', Tenet and/or St. Mary's hospital services agreement which takes away, restricts, or otherwise, limits an MAO's right to recover its payments made for medical services and items on behalf of its enrollees.

**D.    Adequacy of Representation**

80.    Plaintiff and Plaintiff's Counsel can fairly and adequately protect and represent the interests of each member of the Class.

        i.    <u>Adequate Class Counsel</u>

81.    Plaintiff's Counsel have the experience, resources, and commitment to prosecute this case vigorously to a successful resolution.

82.    To prosecute this case, Plaintiff has retained John H. Ruiz, Frank C. Quesada, Gonzalo Dorta, and MSP Recovery Law Firm.  John H. Ruiz has served as lead class counsel for numerous class action cases presiding in both State and Federal Court. In addition to being involved in these types of cases, John H. Ruiz handles other complex litigation matters as well as

trials. John H. Ruiz, Frank C. Quesada, and MSP Recovery Law Firm have the experience and financial ability to prosecute this case. John H. Ruiz, Frank C. Quesada, and MSP Recovery Law Firm have spent time and resources to identify and investigate the potential claims in this action under the MSP Law. They are knowledgeable regarding the MSP Law and its corresponding regulations, so much so that they have published articles, spoken at conferences throughout the country and participated, argued and advanced precedent on the MSP Law in the Eleventh Circuit Court of Appeals.  *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351 (11th Cir. 2016) (appellant and prevailing party); *Humana Med. Plan, Inc. v. W. Heritage Ins. Co*., 832 F.3d 1229 (11th Cir. Fla. 2016) (amicus).  Notably, on February 2, 2017, the Honorable Samantha Ruiz-Cohen granted their Motion for Class Certification in *MSPA Claims 1, LLC v. Ocean Harbor Cas. Ins.*, Case No. 2015-1946-CA-01, an ongoing lawsuit where, like in the instant case, Plaintiff asserts an MSP private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(a), on behalf of itself, and class of similarly situated Florida MAOs.  The trial court held that Plaintiff sufficiently demonstrated that it and its counsel, John H. Ruiz, Esq., Frank C. Quesada, Esq., and Gonzalo Dorta, Esq., could adequately represent the interests of all affected MAOs in one class action proceeding.

      ii.    <u>Adequate Class Representative</u>

83.    Plaintiff is a member of the class as defined above. Plaintiff is committed to the active and vigorous prosecution of this action, and has retained competent counsel experienced in litigation of this nature. There is no hostility of interests between Plaintiff and the other members of the Class. Plaintiff anticipates no difficulty in the management of this litigation as a class action. Plaintiff has no claims that are antagonistic to the claims of the Class members and/or claims it seeks to represent.

### FEDERAL RULE OF CIVIL PROCEDURE 23(b) REQUIREMENTS

84.     In addition to satisfying Rule 23(a), Plaintiff must establish at least one (1) of three

(3) subsections within Federal Rules of Civil Procedure 23(b):

      1.     the prosecution of separate claims or defense by or against individual members of the class would create a risk of either:

            A.     inconsistent or varying adjudications concerning individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or

            B.     adjudications concerning individual members of the class which would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the adjudications, or substantially impair or impede the ability of other members of the class who are not parties to the adjudications to protect their interests.

      2.     the party opposing the class has acted or refused to act on grounds generally applicable to all the members of the class, thereby making final injunctive relief or declaratory relief concerning the class as a whole appropriate; or

      3.     the claim or defense is not maintainable under either subdivision (b)(1) or (b)(2), but the questions of law or fact common to the claim or defense of the representative party and the claim or defense of each member of the class **predominate** over any question of law or fact affecting only individual members of the class, and class representation is **superior** to other available methods for the fair and efficient adjudication of the controversy.

85.     This action is maintainable under Federal Rule of Civil Procedure 23(b)(2) and

(b)(3).

**23(b)(2)**

86.     The Declaratory Relief Class is properly maintainable under Federal Rule of Civil

Procedure 23(b)(2) because the Defendants have acted or refused to act on grounds generally

applicable to all the member of the class, thereby making final injunctive relief or declaratory relief

concerning the class as a whole appropriate.

**23(b)(3)**

87.     The Reimbursement Class is properly certified under Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this case.

A.     Predominance

88.     In this matter, common issues of law and fact concerning liability and causation involved in the action before the Court predominate over issues of individual concern.

89.     The individual cases arise out of the same nucleus of operative facts; that St. Mary's uniformly: (1) billed both an enrollee's primary plan and MAO; (2) received payment from both the primary plan and MAO for the same medical items and services; and (3) failed to reimburse the MAO within sixty (60) days of receipt of the duplicate payment.

90.     Plaintiff maintains a reasonable methodology for generalized proof of class-wide impact using a software system ("MSP System") designed and developed by Plaintiff and its counsel.   The MSP System captures, compiles, synthesizes, and funnels large amounts of data taken from MAOs, CMS, the State of Florida, industry recognized sources, and Defendant's, St. Mary's, submissions to industry recognized sources in order to identify claims class-wide.

B.     Superiority

91.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation because a class action is the most manageable and efficient way to resolve the individual claims of each Class Member.

92.     Specifically, a class action is the superior method of adjudicating Plaintiff's and the Class' claims as: (1) it will provide Plaintiff and the Class Members with the only

economically viable remedy; (2) the individual claims are not large enough to justify the expense of separate litigation considering standard attorneys fee rates in this jurisdiction and the collection costs; and (3) a class action will concentrate all of the litigation in one forum with no unusual manageability problems, particularly because, in this case St. Mary's liability and the nature of the Class Members' damages may be readily proven through common class-wide proofs.

## VI.   CAUSES OF ACTION

### COUNT I
### PRIVATE CAUSE OF ACTION UNDER 42 U.S.C. § 1395y(b)(3)(A) AGAINST DEFENDANT ST. MARY'S

Plaintiff hereby incorporates by reference the allegations of paragraphs one (1) through ninety-two (92) above as if fully set forth herein, and further alleges:

93.     St. Mary's billed both a primary payer and FHCP, a secondary payer, for items and services provided to Enrollee as a result of the injuries sustained in the Accident.

94.     FHCP paid for the medical services and treatment rendered to its Enrollee, which resulted in charges in the amount of $2,086.00.

95.     Despite the existence of a responsible primary payer, as defined in 42 U.S.C. §§ 1395y(b)(2) and 1395w-22(a)(4), with respect to the medical expenses incurred by Enrollee arising from the Accident, FHCP was nonetheless billed and paid for Enrollee's medical expenses.

96.     Despite having billed FHCP, St. Mary's also billed and collected payment from a primary payer for the medical treatment rendered to Enrollee.  Hence, St. Mary's billed two (2) parties for the same services.

97.     Upon St. Mary's receipt of payment from the primary payer, Defendant became obligated to reimburse Plaintiff $2,086.00, within sixty (60) days pursuant to 42 C.F.R. § 411.24(h).

98.     St. Mary's, as an entity that received payment from a primary payer, is required to reimburse Plaintiff pursuant to 42 U.S.C. § 1395y(b)(2)(B)(ii) and 42 C.F.R. §§ 411.24(g), 422.108.

99.     St. Mary's failed to appropriately reimburse Plaintiff in accordance with 42 C.F.R. § 411.24(h).

100.    Therefore, St. Mary's failed to make appropriate reimbursements to Plaintiff for the items and services for which FHCP made payments.

101.    Congress established a private cause of action under 42 U.S.C. § 1395y(b)(3)(A), permitting the recovery of double damages for a failure to make appropriate reimbursement in accordance with the MSP Law.

102.    Under the private cause of action established by 42 U.S.C. § 1395y(b)(3)(A), Plaintiff is entitled to recover an amount double the amount otherwise provided.  FHCP processed payments in the amount of $2,086.00, and therefore, Plaintiff is entitled to recover double that amount, $4,172.00[5], from St. Mary's.

**WHEREFORE**, Plaintiff demands judgment for itself and the Class against St. Mary's for double damages, court costs, interest, and such other and further relief as this Court deems just and proper.

## COUNT II
## <u>FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT AGAINST DEFENDANT ST. MARY'S</u>

Plaintiff hereby incorporates by reference the allegations of paragraphs one (1) through ninety-two (92) above as if fully set forth herein, and further alleges:

---

[5] The amount sought is subject to a setoff of any payments made by Defendants.

103.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") provides that "unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." § 501.204(1), Fla. Stat. (2016).

104.     Plaintiff is a consumer under the meaning of section 501.203(7), Florida Statutes.

105.     Under section 501.203(8), Florida Statutes, "trade or commerce" is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated."

106.     As defined, St. Mary's was and is engaged in "trade or commerce" in providing medical services and/or supplies.

107.     St. Mary's billed and collected from both a primary payer and a secondary payer for medical items and services provide to Enrollee.

108.     St. Mary's was required to reimburse Plaintiff in accordance with 42 C.F.R. § 411.24(h).

109.     However, St. Mary's failed to appropriately reimburse Plaintiff.

110.     St. Mary's deceptive and unfair practices were a direct and proximate cause of Plaintiff's damages.

111.     Plaintiff's damages include, but are not limited to, paying for services that should have been and/or were already paid by another insurer.

112.     St. Mary's benefited from its deceptive and unfair practices by receiving double payment for the same services.

113.     Plaintiff is entitled to recover its attorneys' fees and court costs pursuant sections 501.2105 and 501.211, Florida Statutes.

**WHEREFORE**, Plaintiff demands judgment for itself and the Class against St. Mary's for damages, court costs, interest, and such other and further relief as this Court deems just and proper.

## COUNT III
## UNJUST ENRICHMENT AGAINST DEFENDANT ST. MARY'S

Plaintiff hereby incorporates by reference the allegations of paragraphs one (1) through ninety- two (92) above as if fully set forth herein, and further alleges:

114.    FHCP conferred a benefit upon St. Mary's by promptly paying for the medical services rendered to Enrollee.

115.    At all times material hereto, St. Mary's was aware of the benefit conferred by FHCP.

116.    In accepting payment by FCHP and Allstate, St. Mary's knowingly and voluntarily accepted the payment from both sources for the same services.

117.    St. Mary's failed to appropriately reimburse Plaintiff.

118.    Accordingly, it is unjust and inequitable for St. Mary's to keep monies which belong to Plaintiff, and Plaintiff is entitled to appropriate reimbursement.

**WHEREFORE**, Plaintiff demands judgment for itself and the Class against St. Mary's for damages, court costs, interest, and such other and further relief as this Court deems just and proper.

## COUNT IV
## DECLARATORY RELIEF AGAINST DEFENDANT TENET

Plaintiff hereby incorporates by reference the allegations of paragraphs one (1) through ninety-two (92) above as if fully set forth herein, and further alleges:

119.    The MSP Law provides that MAOs exercise the same rights to recover from a primary plan, entity, or individual as original Medicare.  *See* 42 C.F.R. § 422.108(f).

120.     MAO payments are made secondary to primary payments pursuant to the MSP Law.  *See Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1237 (11th Cir. 2016); 42 U.S.C. §§ 1395y(b)(2), 1395w-22(a)(4).

121.     The MSP private cause of action and its corresponding regulations permit an MAO to sue a primary plan that fails to reimburse an MAO's secondary payment.  *See W. Heritage Ins. Co.*, 832 F.3d at 1238; 42 U.S.C. § 1395y(b)(3)(A); 42 C.F.R. §§ 411.24(e), (h).

122.     The Services Agreement entered into between FHCP and Tenet on behalf of St. Mary's contains provisions that contravene Federal law.  Upon information and belief, Tenet and the Class entered into services agreements containing similar provisions.

123.     Sections 4.4 and 4.5 of the Services Agreement operate to take away, limit, and restrict FHCP and the Class from seeking reimbursement under Federal law and the MSP regulations.  42 U.S.C. § 1395y(b)(3)(A); 42 C.F.R. §§ 411.24(e), (h).

124.     Accordingly, the Services Agreement is in direct contravention of FHCP's reimbursement rights.  *See* 42 C.F.R. § 422.108(f).

125.     Being that the Services Agreement attempts to limit the MAO's right to seek appropriate reimbursement in accordance with Federal law, the unlawful provisions are void and should be declared unenforceable.

126.     As a direct and proximate result of the foregoing, Plaintiff is in doubt as to its rights under the Services Agreement concerning the recovery of FHCP payments made on behalf of its enrollees to Tenet.

127.     Plaintiff has a bona fide, actual and present practical need for a declaration as to its rights under the Services Agreement concerning the recovery of FHCP payments made on behalf of its enrollees to Tenet.

**WHEREFORE**, Plaintiff and the Class request an Order declaring:

1)  the unlawful portions of the Services Agreement to be void and unenforceable;

2)  any other restrictions regarding the reimbursement of FHCP payments made on behalf of enrollees to Tenet contained in the Services Agreement have no force or effect;

3)  MAOs' right to reimbursement preempt any contractual provisions in accordance with 42 C.F.R. § 422.108(f);

4)  Plaintiff is entitled to attorney's fees pursuant to section 6.2 of the Services Agreement; and

5)  any other relief this Court deems just and proper.

## COUNT V
## DECLARATORY RELIEF AGAINST DEFENDANT ST. MARY'S

Plaintiff hereby incorporates by reference the allegations of paragraphs one (1) through ninety-two (92) above as if fully set forth herein, and further alleges:

128.    The MSP Law provides that MAOs exercise the same rights to recover from a primary plan, entity, or individual as original Medicare. *See* 42 C.F.R. § 422.108(f).

129.    MAO payments are made secondary to primary payments pursuant to the MSP Law. *See Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1237 (11th Cir. 2016); 42 U.S.C. §§ 1395y(b)(2), 1395w-22(a)(4).

130.    The MSP private cause of action and its corresponding regulations permit an MAO to sue a primary plan that fails to reimburse an MAO's secondary payment. *See W. Heritage Ins. Co.*, 832 F.3d at 1238; 42 U.S.C. § 1395y(b)(3)(A); 42 C.F.R. §§ 411.24(e), (h).

131.    The Services Agreement entered into between FHCP and Tenet on behalf of St. Mary's contains provisions that contravene Federal law.  Upon information and belief, St. Mary's and the Class entered into services agreements containing similar provisions.

132.   Sections 4.4 and 4.5 of the Services Agreement operate to take away, limit, and restrict FHCP and the Class from seeking reimbursement under Federal law and the MSP regulations.  42 U.S.C. § 1395y(b)(3)(A); 42 C.F.R. §§ 411.24(e), (h).

133.   Accordingly, the Services Agreement is in direct contravention of FHCP's reimbursement rights.  *See* 42 C.F.R. § 422.108(f).

134.   Because the Services Agreement attempts to limit the MAO's right to seek appropriate reimbursement in accordance with Federal law, the unlawful provisions are void and should be declared unenforceable.

135.   As a direct and proximate result of the foregoing, Plaintiff is in doubt as to its rights under the Services Agreement concerning the recovery of payments made to St. Mary's by FHCP, on behalf of its enrollees.

136.   Plaintiff has a bona fide, actual and present practical need for a declaration as to its rights under the Services Agreement concerning the recovery of FHCP payments made on behalf of its enrollees to St. Mary's.

**WHEREFORE**, Plaintiff and the Class request an Order declaring:

1) the unlawful portions of the Services Agreement to be void and unenforceable;

2) any other restrictions regarding the reimbursement of FHCP payments made on behalf of enrollees to St. Mary's contained in the Services Agreement have no force or effect;

3) MAOs' right to reimbursement preempt any contractual provisions in accordance with 42 C.F.R. § 422.108(f);

4) Plaintiff is entitled to attorney's fees pursuant to section 6.2 of the Services Agreement; and

5) any other relief this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.


Dated: February 6, 2017.

Respectfully submitted,

**MSP RECOVERY LAW FIRM**
5000 SW 75th Avenue, Suite 400
Miami, Florida 33155
Telephone: (305) 614-2222

By: */s/ John H. Ruiz, Esq.*
John H. Ruiz, Esq., Fla Bar No. 928150
Frank C. Quesada, Esq., Fla. Bar No. 29411


## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on this the 6th day of February, 2017 the foregoing was electronically filed with the Clerk of the Court using the CM/ECF filing system.  We also certify that the forgoing document is being served this date on all counsel of record or pro se parties on the attached Service List in the manner specified, either *via* transmission of Noticed of Electronic Filing generated by the CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to received electronically Notices of Electronic Filing.


By: */s/ John H. Ruiz, Esq.*
John H. Ruiz, Esq., Fla Bar No. 928150

**SERVICE LIST**

**David R. Ruffner, Esquire**
Lash & Goldberg, LLP
Miami Tower
100 Southeast Second Street, Suite 1200
Telephone: (305) 347-4040
Fax: (305) 347-4050
druffner@lashgoldberg.com