UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-20039-CIV-WILLIAMS

MSPA CLAIMS I, LLC,

    Plaintiff,

vs.

TENET FLORIDA, INC., *et al.*

    Defendant.
_____/

## ORDER

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (DE 21). Plaintiff filed a response in opposition to the motion (DE 26), and Defendants filed a reply (DE 28). For the reasons set forth below, Defendant's motion to dismiss is granted.

**I.   BACKGROUND**

This case is a putative class action purportedly arising out of the Medicare Secondary Payer Act, 42 U.S.C. § 1395y (the "MSPA"). Plaintiff MSPA Claims I, LLC (the "Assignee Plaintiff") alleges that Defendants Tenet Florida, Inc. and St. Mary's Medical Center, Inc. (the "Provider Defendants") failed to reimburse Florida Healthcare Plus ("FHCP")—the assignor Medicare Advantage Organization ("MAO")—for conditional payments made on behalf of Medicare beneficiaries who were separately covered by a private insurer qualifying as a primary payer under the MSPA. In addition to the MSPA Claim (Count I), the Second Amended Complaint includes a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count II), a claim for unjust enrichment ("Count III"), and two claims for declaratory relief (Counts IV and V).

1

### a. The Medicare Secondary Payer Act

The specific structure of Medicare payments under the MSPA is explained in detail in Plaintiffs' complaint. In general terms, the MSPA makes Medicare a "secondary payer" to other sources of coverage, and entitles them to reimbursement from a "primary payer"—once liability has been established with regard to that other entity—for any conditional payments made by Medicare on behalf of the beneficiary. The Act provides for a "private cause of action for damages" in the event that a primary payer fails to fulfill its reimbursement obligations under the MSPA. (See DE 17 ¶¶33-42).

The Plaintiff is a limited liability company that receives assignments from various entities to pursue claims arising out of the MSPA. Plaintiff argues that it has standing to bring these claims under the private right of action authorized by the MSPA because an MAO—FHCP—has assigned its recovery rights to Plaintiff.[1] An MAO is a private insurer who has entered into a contract with the United States Centers of Medicare and Medicaid Services ("CMS") to provide traditional Medicare coverage to Medicare beneficiaries. They receive a fixed payment from Medicare for each Medicare-covered enrollee, and then directly pay providers for any services rendered to those individuals. Depending on the services required during the coverage period, the MAO then absorbs the profit or loss based on the differential between the payments made to providers and the fixed payment received from Medicare. Because they provide traditional Medicare services, MAOs are

---

[1] The Second Amended Complaint alleges that, on April 15, 2014, FHCP assigned its recovery rights to La Ley Recovery Systems, Inc. ("La Ley"). (DE 17 ¶15). That assignment agreement is attached to the Second Amended Complaint as Exhibit A. The Complaint further alleges that, on February 20, 2015, La Ley assigned the recovery rights obtained from FHCP to Plaintiff in this action, MSPA Claims I, LLC. (DE 17 ¶10). Based on those agreements (the "Assignment Agreements"), Plaintiff alleges that "prior to the filing of this suit, Plaintiff maintained the requisite standing to file suit.

2

entitled to "exercise the same rights to recover from a primary plan, entity or individual that the Secretary exercises under the MSP regulations." 42 C.F.R. § 422.108(f)). (*See* DE 17 ¶¶24-32).

### b. The Hospital Services Agreement

Separate and apart from their rights and obligations under the MSPA, an MAO may enter into agreements with medical providers regarding the provision of covered services to the MAO enrollees. Those agreements are not governed by the MSPA, but are private contractual agreements regarding the relationship between the two entities involved. In this case, FCHP entered into a Hospital Services Agreement (the "Services Agreement") with Tenet Florida, Inc. on behalf of St. Mary's Medical Center on July 16, 2013. (DE 17 ¶56). That agreement governed the relationship between FCHP and the Provider Defendants, and, among other things, explained the payment mechanism for services provided to MAO enrollees and set out the manner in which the Parties were entitled to resolve any disputes relating to their arrangement. (DE 17 ¶¶57-60).

On September 3, 2013, an FHCP enrollee was involved in an automobile accident and received medical treatment at St. Mary's. (DE 17 ¶¶44-45). The enrollee was covered both by FCHP and by a private, no-fault insurer—Allstate Fire and Casualty Insurance Company ("Allstate")—at the time those services were rendered. (DE 17 ¶¶43, 46). St. Mary's billed both FHCP and Allstate for the medical treatment in the amount of $2086.00. (DE 17 ¶¶47-49). FHCP made a payment of $285.75, and Allstate made a payment of $1,251.60. (DE 17 ¶¶48-49). St. Mary's then reimbursed FCHP in the full amount of its conditional payment—$285.75—based upon the payment by Allstate as a primary payer under the MSPA. (DE 17 ¶53).

## II.  LEGAL STANDARD

### a. Article III Standing

"Article III of the Constitution limits the judicial power of the United States to the resolution of Cases and Controversies." *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 597-98 (2007) (internal quotations and citations omitted). Because Federal courts are courts of limited jurisdiction, they are "obligated to inquire into subject matter jurisdiction . . . whenever it may be lacking." *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) (citing, among others, *Fitzgerald v. Seaboard Sys. R.R.*, 760 F.2d 1249, 1251 (11th Cir.1985) (per curiam); *see also Save the Bay, Inc. v. United States Army*, 639 F.2d 1100, 1102 (5th Cir.1981) (per curiam) (holding that courts must constantly examine the basis of their jurisdiction before proceeding to the merits); *Cuban Am. Bar Ass'n v. Christopher*, 43 F.3d 1412, 1422 (11th Cir. 1995) (noting that "'[b]efore rendering a decision . . . every federal court operates under an independent obligation to ensure it is presented with the kind of concrete controversy upon which its constitutional grant of authority is based."). "[S]tanding 'is perhaps the most important of [the jurisdictional] doctrines.'" *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990) (quoting *Allen*, 468 U.S. at 750). It is a doctrine "rooted in the traditional understanding of a case or controversy" that "developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016).

An analysis of standing requires an examination of "whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752 (1984). "[T]he 'irreducible constitutional minimum' of standing consists of three

elements": "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* (citing *FW/PBS, Inc.* 493 U.S. at 231 (1990)).

"Where, as here, a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element." *Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). Each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

### b. Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court's consideration is limited to the allegations in the complaint. *See GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). All factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *See Speaker v. U.S. Dep't. of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010); *see also Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998). Although a plaintiff need not provide "detailed factual allegations," a plaintiff's complaint must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). "[A] formulaic recitation of the elements of a

cause of action will not do." *Id.* Rule 12(b)(6) does not allow dismissal of a complaint because the court anticipates "actual proof of those facts is improbable," but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289 (11th Cir. 2007)(quoting *Twombly*, 550 U.S. at 545).

### III.   DISCUSSION

#### a. Standing for the MSPA Claims

Though a valid assignment of recovery rights may allow Assignee Plaintiffs to stand in the shoes of an MAO and bring suit under the MSPA to redress an injury suffered by that MAO assignor, it remains the Plaintiffs' obligation to demonstrate both a valid assignment and an underlying injury to the assignor. With regard to the assignment, the Defendants argue that Plaintiff has failed to demonstrate either of these elements of standing, because the Services Agreement signed by the Parties contained a non-assignment provision, making any purported assignment of rights under that contract presumptively invalid. As to the injury, Defendants argue that the full repayment of FHCP's $285.75 conditional payment upon receipt of payment from Allstate two years before this suit was initiated defeats any claims of an injury in fact.

Plaintiff first responds by asserting that it has standing because the assignment of recovery rights under the MSPA—which is the basis for these claims—is independent from an assignment of rights under the Services Agreement, which contains the non-assignment clause. In addition, Plaintiff argues that the Provider Defendants' failure to reimburse FHCP within 60 days subjects them to double damages and interest, and therefore Plaintiff has pleaded an injury in fact despite the full reimbursement of the conditional payments made by FHCP.

Because Plaintiff's claims under Count I allegedly relate to recovery rights under the MSPA and not contractual obligations under the Services Agreement, the Court agrees that the anti-assignment provision of the Services Agreement is not germane to the question of standing on the MSPA claims. Still, the Court need not evaluate the validity of the MSPA recovery assignment here, because Plaintiff's allegations regarding actual injury are deficient. In the Second Amended Complaint, Plaintiff acknowledges, for the first time, that St. Mary's repaid Medicare in full for the conditional payments made on behalf of the enrollee upon receipt of payment from Allstate, a primary payer. Still, Plaintiff states that "St. Mary's was required to pay $2,086.00, representing the charged amount billed to Plaintiff within sixty (60) days of the receipt of the payment" and that failure to do so entitles Plaintiff to double damages under the statute. (DE 17 ¶¶53-54).

Plaintiff claims that this failure constitutes an injury in fact, citing to *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1238 (11th Cir. 2016). But the *Humana* case makes no such pronouncement. Instead the quoted portion of the decision was discussing an MAO's statutory right to bill a primary payer to recoup conditional payments made, and stated that "[i]n such a case, the primary plan's failure to make primary payment or to reimburse the MAO causes the MAO an injury in fact." *Humana Med.*, 832 F.3d at 1238. That is not the set of circumstances presented here.[2]

Plaintiff's other purported "injuries" are similarly insufficient to satisfy the requirements of Article III. First, Plaintiff claims that the amount owed for reimbursement was not the $285.75 made as a conditional payment by FHCP, but rather the $2,086.00

---

[2] For the same reasons, Plaintiff's citation to 42 U.S.C. §1395y(b)(3)(A) in support of the proposition that they are entitled to double damages is unavailing because, as explained in more detail below, that subsection is also based upon nonpayment by a primary payer. (DE 17 ¶41).

7

billed by the Provider Defendants. (DE 17 ¶53). Putting aside the fact that Plaintiff provides no basis—legally, factually, or statutorily—for that assertion in either the briefing on this motion or the Second Amended Complaint, this contention is directly belied by the language of 42 C.F.R. § 411.24, which is entitled "Recovery of Conditional Payments" and states under Section (c) "Amount of recovery": (1) If it is not necessary for CMS to take legal action to recover, CMS recovers the **lesser** of the following: (i) The amount of the Medicare primary payment[; or] (ii) The full primary payment amount that the primary payer is obligated to pay under this part . . .." (emphasis added). Because Allstate paid the medical expenses of the enrollee and the Provider Defendants reimbursed Medicare without legal action, the amount of recovery in this case under the regulations would therefore be precisely what the Defendants paid: $285.75.

Second, Plaintiff claims that 42 C.F.R. § 411.24(h) requires that reimbursement be tendered within 60 days of payment from the primary payer, and alleges that the Provider Defendants failed to provide appropriate repayment within that timeline, entitling FHCP to additional payment. While it is true that 42 C.F.R. § 411.24(h) states that "[i]f the beneficiary or other party receives a primary payment, the beneficiary or other party must reimburse Medicare within 60 days," the apparent penalty for failing to comport with that timeframe is accrual of interest on the amount owed. See 42 C.F.R. § 411.24(m) ("(i) CMS may charge interest if reimbursement is not made to the appropriate trust fund before the expiration of the 60-day period . . . (ii) Interest may accrue . . ."). Plaintiff has pled no facts regarding the amount of interest owed based on the alleged 7-month delay in the $285.75 reimbursement or any request that such an interest payment be made, despite the fact that the language of 42 C.F.R. § 411.24(m) makes the charge of interest

8

elective, not mandatory. See 42 C.F.R. § 411.24(m). It is also unclear whether the recovery of interest is related to or permitted under the private cause of action available to an MAO Plaintiff or its assignee.

Additionally, as the Court noted in *Humana Med.*, pursuant to the regulations, a third party's failure to reimburse Medicare within 60 days triggers a payment obligation for the primary payer, not the third party recipient. *Humana Med.*, 832 F.3d at 1239 ("If a beneficiary or other party fails to reimburse Medicare within 60 days of receiving a primary payment . . . the primary plan 'must reimburse Medicare even though it has already reimbursed the beneficiary or other party."); 42 C.F.R. § 411.24(i)(1)). The *Humana Med.* court explicitly noted that "[t]his regulation applies equally to an MAO." *Id.*; 42 C.F.R. § 422.108(f)). As such, Plaintiff has failed to demonstrate an injury in fact that would confer Article III standing upon the assignor MAO or, by extension, the Assignee Plaintiff.

### b. Plaintiff's Federal Claims

Nonetheless, even if Plaintiff had alleged standing, the Court finds that the federal claims would still be subject to dismissal under Federal Rule of civil Procedure 12(b)(6), because they fail to state a claim.

### i. MSPA Claims (Count I)

Plaintiff claims that FCHP was entitled to reimbursement under the MSPA scheme set out in Section I(a), because Allstate, a primary payer under the MSPA, was liable to the Provider Defendants for the same services that FHCP had conditionally paid out as a secondary payer. Because both insurers were initially billed and both remitted payment to the Provider Defendants, Plaintiff maintains that it is entitled to bring this suit under the MSPA, arguing that "CMS has a right of action to recover its payments from any . . .

9

provider . . . that has received a primary payment," and an MAO has the same recovery rights as CMS under the relevant portions of the MSPA. (DE 26 at 4, citing 42 C.F.R. § 411.24(g) and 422.108(f)). Again, they cite to *Humana Med.* Again, reliance on that case is misplaced.

Both the holding of *Humana Med.* and its discussion of the MSPA make clear that, as a private entity assignee bringing suit, Plaintiff must rely on the statutory language setting forth a private right of action in order to bring this case. *See Humana Med.*, 832 F.3d at 1236 ("Although the Secretary believes MAOs may sue in federal court to recover reimbursement from a primary plan, MAOs have no cause of action absent a statutory basis"). As noted above, that private right of action is set out in 42 U.S.C. §1395y(b)(3)(A), and states that "[t]here is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) **in the case of a primary plan which fails to provide for primary payment** (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)" (emphasis added).

As the unequivocal language of 42 U.S.C. §1395y(b)(3)(A) makes clear—and as the Eleventh Circuit's decision in *Humana Med.* reiterates—any action brought under this subsection of the MSPA must be predicated upon nonpayment by a primary payer. *See Humana Med.*, 832 F.3d at 1238 ("[A]n MAO may avail itself of the MSP private cause of action when a primary plan fails to make primary payment or to reimburse the MAO's secondary payment."). In fact, *Humera Med.*'s limited holding only authorized the direct suit of a primary payer itself by an MAO under the private cause of action. *Id.* ("We conclude that paragraph (3)(A), the MSP private cause of action, permits an MAO to sue a primary plan that fails to reimburse an MAO's secondary payment.").

Plaintiff has not cited to any cases in this district in which a private cause of action was allowed to proceed under the MSPA against a provider—let alone after a primary payment had been made and reimbursement of a conditional payment had been issued— and the Court can find no authority for permitting it here. And though Plaintiff has cited to numerous sections of the MSPA statute and the corresponding regulations that permit recovery of payments in a variety of circumstances, none of those provisions alter the plain language of §1395y(b)(3)(A), which must be the basis for this suit. Consequently, the Court finds that Plaintiff's Second Amended Complaint has failed to state a claim under the MSPA, and Count I of the complaint must be dismissed.

### ii. Declaratory Judgment Act Claims (Counts IV and V)

Counts IV and V of the Second Amended Complaint seek declaratory relief against the Provider Defendants pursuant to the Declaratory Judgement Act (28 U.S.C. §§2201-2202). Specifically, Plaintiff contends that certain provisions of the Services Agreement conflict with the MSPA, and therefore asks the Court to declare certain portions of the Services Agreement void and unenforceable, to declare that the provisions of the MSPA preempt any contrary obligations under the Services Agreement, and to declare that Plaintiff is entitled to attorney's fees under the Services Agreement. (DE 17 ¶¶127, 136).

As an initial matter, based on the Court's finding that the allegations in the Second Amended Complaint do not give rise to a claim under the MSPA, any remaining challenges to the payments received by FHCP from the Provider Defendants would arise under the Services Agreement. As Defendants point out, that agreement contains an anti-assignment provision, and the Second Amended Complaint articulates no basis for invalidating that provision and permitting Plaintiff to challenge the terms of that private

contract to which Plaintiff is not a party. Put differently, even if Plaintiff had established a valid assignment with regard to recovery rights under the MSPA, Plaintiff has not established any independent basis for challenging the terms of the Services agreement as it seeks to do in Counts IV and V, and indeed concedes in its brief that FHCP did not assign its rights under the Services Agreement to Plaintiff. (DE 26 at 10 ("**FHCP *never* assigned its contract rights under the Tenet Agreement**")).

Even if Plaintiff were permitted to challenge the terms of the Services Agreement under the Declaratory Judgment Act, those claims fail because Plaintiff has not pled any conflict between the provisions of the Services Agreement—which govern FHCP's rights and obligations relating to the provision of services to MAO enrollees[3]—and the MSPA—which governs FHCP's reimbursement rights relating to primary payers under the Act.[4] Specifically, Plaintiff has pointed to no provision of the Services Agreement that actually undermines or affects any of FHCP's rights under the MSPA. Therefore, the Court finds that there is no "actual controversy" as would be required for jurisdiction under the Declaratory Judgment Act, and Plaintiff's declaratory judgment claims must be dismissed. *GEICO Gen. Ins. Co. v. Farag*, 597 F. App'x 1053, 1056 (11th Cir. 2015) (citing *U.S. Fire*

---

[3] The MSPA explicitly allows MAOs to subcontract with medical providers to provide services to enrollees, and such agreements are private contracts falling outside the scope of the MSPA. *See Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584, 591 (11th Cir. 2017) (noting that "the Medicare Act explicitly allows contract providers and MAOs to define the terms of their own agreements without reference to the Medicare regulations" and that "contracts between [Medicare Advantage] organizations and providers are subject to very few restrictions" under 42 C.F.R. § 422.520(b).")

[4] It is true that the MSPA discusses repayment through various intermediaries, including service providers. But, ultimately, repayment obligations under the Act fall to the primary payer and, as set out above, Plaintiff's recovery rights under the MSPA are limited to suits against that primary payer.

12

*Ins. Co. v. Caulkins Indiantown Citrus Co.*, 931 F.2d 744, 747 (11th Cir.1991)) ("The Declaratory Judgment Act's 'actual controversy' requirement is jurisdictional and, thus, 'a threshold question in an action for declaratory relief must be whether a justiciable controversy exists.'").

### c. Plaintiff's Remaining Claims (Counts II and III)

The remaining claims in the Second Amended Complaint are state law claims, which were removed to federal court after federal causes of action were added in the First Amended Complaint that was filed in the initial state-court case. In any case where a federal court has original jurisdiction, the court may exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Under that statute, a court may decline to exercise supplemental jurisdiction if: (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

Because the Court has determined that Counts I, IV, and V should be dismissed, there are no federal claims remaining in this case over which the Court possesses original jurisdiction. As such, the Court declines to exercise supplemental jurisdiction over the remaining counts in the Second Amended Complaint.

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (DE 21) is **GRANTED**. Under Federal Rule of Civil Procedure 15, leave to amend should be freely given "when justice so requires," unless amendment would be futile. Notwithstanding this rule, however, "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Courts have found that "denial of leave to amend is justified by futility 'when the complaint as amended is still subject to dismissal.'" *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir.1999) (citing *Halliburton & Assoc., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 444 (11th Cir.1985)).

Because the deficiencies set out in this Order relate to the nature of the allegations contained in Counts I, IV, and V of the Second Amended Complaint, and because Plaintiff has had numerous opportunities to amend, the Court finds that amendment would be futile, and those counts are **DISMISSED WITH PREJUDICE**. The state law claims—Counts II and III—are **DISMISSED WITHOUT PREJUDICE**. All hearings, trial settings, and deadlines are **CANCELED**. The Clerk is instructed to **CLOSE** this case.

**DONE AND ORDERED** in chambers in Miami, Florida, this 29th day of March, 2018.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE